UNDERWRITERS AT INTEREST, subscribing to Cover Notes and policies WAO 37100KL and WAO 37090KL, Plaintiffs,

v.

SCI STEELCON, a Michigan corporation, et al., Defendants.

No. 1:94–CV–467.

United States District Court,
W.D. Michigan,
Southern Division.

June 26, 1995.

**442**

Randall E. Phillips, Noel F. Beck, Provizer, Lichtenstein, Pearlman & Phillips, PC, Southfield, MI, for Underwriters at Interest, Subscribing to Cover Notes and Policies WAO 37100KL and Underwriters at Interest, Subscribing to Cover Notes and Policies WAO 37090KL.

Patrick A. Facca, Grylls, Facca, Richter & Pregler, PC, Royal Oak, MI, for SCI Steelcon.

Charles E. Ritter, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for Kal–Aero, Inc.

Andis Svikis, Andis Svikis Law Office, Kalamazoo, MI, for DeLoof Construction Co.

## OPINION

ROBERT HOLMES BELL, District Judge.

In this action, Plaintiffs seek a declaration that they are not obligated to pay on two policies which they issued to defendant SCI Steelcon. Before the Court at this time is Plaintiffs' motion for summary judgment.

## I

SCI Steelcon (Steelcon) is a steel erection contractor. During the relevant time period involved in this case, Steelcon had two policies with Plaintiffs providing liability insurance. The first was a primary policy of comprehensive general liability insurance. That policy provides in part:

> Underwriters will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage
>
> to which this insurance applies, caused by an occurrence, ... but Underwriters shall not be obligated to pay any claim or judgment ... after the applicable limit of Underwriters' liability has been exhausted by payment of judgments or settlements.

The limit on this primary policy is $1,000,000 per occurrence, with a $5,000 deductible. Plaintiffs also issued an umbrella policy to Steelcon. The umbrella policy insures Steelcon against covered personal injuries, property damage, and advertising liability caused by an occurrence. The limit on the umbrella policy is $4,000,000 per occurrence, less the limits of underlying insurance (if covered by underlying insurance) or $25,000 (if not covered by underlying insurance).

In 1991, Kal–Aero, Inc. (Kal–Aero) hired DeLoof Construction Co. (DeLoof) as its general contractor to erect a pre-engineered Behlen S Span Building for it at the Battle Creek Airport. DeLoof, in turn, hired Steelcon as a subcontractor to erect the structure, the component parts of which DeLoof provided to Steelcon. Erection of the structure commenced in 1991 and continued into 1992, with Kal–Aero taking possession of the structure in August 1992. Kal–Aero, which services and maintains corporate and private aircraft, utilized the structure for this purpose.

Apparently, Steelcon erected the structure in a poor manner. Steelcon allegedly failed to erect the structure in the proper location and to align it properly. According to Kal–Aero and DeLoof, these errors, and the remedial steps which Steelcon took to correct them, led to several problems with the com-

pleted structure. Most notably, the roof leaked causing damage to the interior of the structure and to several aircraft upon which Kal–Aero was performing work, and necessitating substantial repairs to the roof and the structure itself.

In May 1994, Steelcon sued Kal–Aero and DeLoof in the Kalamazoo County Circuit Court. Steelcon sought to recover amounts it claimed were due it, either under its contract with DeLoof or to prevent unjust enrichment. Kal–Aero and DeLoof filed counterclaims in which they asserted that they were entitled to damages, or set-offs, for damages which they incurred as a result of Steelcon's poor workmanship. These claims were evaluated by George Lennon who performed a special mediation evaluation. It was Mr. Lennon's conclusion that the unpaid balance on the contract was $259,300, that Kal–Aero's counterclaim was evaluated at $245,300, that DeLoof's counterclaim was evaluated at $0, and that, therefore, Steelcon was entitled to a construction lien in the amount of $14,000 plus $1,538 in interest. All parties have accepted this evaluation, and DeLoof has agreed to pay the net award to Steelcon.

Steelcon had requested that Plaintiffs defend it against the counterclaims of Kal–Aero and DeLoof and indemnify it for the amount of the set-off against its claim. Plaintiffs tendered a defense to Steelcon against DeLoof's counterclaim, but not against Kal–Aero's, since only the DeLoof counterclaim asserted a theory for recovery potentially within the coverage of the policies. Plaintiffs filed the instant action in September 1994 seeking a declaration that they are not obligated to defend or indemnify Steelcon for any amount.

## II

Plaintiffs seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In this case, the parties are in agreement as to the material facts, and the Court is called upon to determine whether the damages assessed against Steelcon are covered under the unambiguous terms of the policies.

Moreover, although Steelcon has not filed a cross-motion for summary judgment, in appropriate circumstances the Court may independently raise and grant a summary judgment motion in favor of the non-moving party. *See Coach Leatherware Co. v. Ann-Taylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991); *McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir.1991); *Dayton Elec. Mfg. Co. v. APCOM, Inc.,* 782 F.Supp. 389, 394–95 (N.D.Ill.1992); *see generally* 6 Moore's Federal Practice, ¶ 56.12.

## III

The Court first considers which jurisdiction's substantive law applies with regard to the interpreting of the terms of the policies. When a choice-of-laws issue arises in a case in which jurisdiction is based on diversity of citizenship, a federal court must apply the forum state's choice-of-law rules. *Mahne v. Ford Motor Co.,* 900 F.2d 83, 85 (6th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). Thus, Michigan's choice-of-law rules govern in this case.

Until recently, when determining the proper interpretation of a contract, the courts of Michigan applied the law of the jurisdiction in which the last act necessary for making that contract a binding agreement occurred. *See, e.g. Rubin v. Gallagher,* 294 Mich. 124, 128, 292 N.W. 584 (1940); *Bonelli v. Volkswagen,* 166 Mich.App. 483, 507, 421 N.W.2d 213 (1988); *Wells v. 10–X Mfg. Co.,* 609 F.2d 248, 253 (6th Cir.1979). With an insurance contract, that last act is the countersignature of the insurer. *See Insurance Co. of N.A. v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212, 1219 (6th Cir.), *reh'g granted in part on other grounds,* 657 F.2d 814 (6th Cir.1980). In the instant case, since both policies were countersigned on November 5, 1991 by Equipment Insurance Managers, Inc., Plaintiffs' resident agent, at its offices in Dallas, Texas, this rule would

have compelled the Court to apply Texas law regarding the interpretation of the provisions of the policies.

This rigid rule, however, has apparently succumbed to the more fluid rule set forth in the Restatement (Second) of Conflicts of Laws.

> Much as lex loci delicti had proven too inflexible for resolution of tort conflicts, the rigid "law of the place of contracting" approach has become outmoded in resolving contract conflicts. Rather, §§ 187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities.

*Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 448 Mich. 113, 124, 528 N.W.2d 698 (1995).

Pursuant to § 188 of the Second Restatement, the Court is left with the clear impression that it must apply Michigan's substantive law in the instant case. The sole contact which suggests that law other than Michigan's be applied is the place of the contracting. As indicated above, the place of contracting was Texas. But examining the principles of § 6 of the Second Restatement, the Court concludes that Texas has little, if any, interest in having its law applied. There is no indication that Plaintiffs are residents of Texas, and their choice of a Texas agent is nothing more than chance—that is, Plaintiffs could have as easily used an agent in any other state. And, since the agent is not involved in this matter, Texas has no interest in protecting it. This interest, if any, of Texas is substantially outweighed by the fact that Steelcon, a Michigan corporation, has its principal place of business in Michigan.

Accordingly, the Court will apply the substantive law of Michigan with regard to the interpretation of the terms of the contract.

## IV

Plaintiffs argue that two exclusions in the primary policy relieve them of any obligation to cover the damages set off against Steelcon's claim against Kal–Aero and DeLoof. These exclusions are the faulty workmanship exclusion and the products exclusion.

## A

■ The comprehensive general liability insurance policy read in conjunction with the broad form comprehensive general liability endorsement provides in part:

> This insurance does not apply:
>
> \*     \*     \*     \*     \*     \*
>
> 2. except with respect to liability under a written sidetrack agreement or the use of elevators
>
> \*     \*     \*     \*     \*     \*
>
> d. to that particular part of any property, not on premises owned by or rented to the insured,
>
> \*     \*     \*     \*     \*     \*
>
> iii. the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured;

Where a contractor's workmanship is faulty, this faulty workmanship exclusion unambiguously excludes coverage as to damage to the particular part of property with regard to which the workmanship was faulty. But it does not exclude coverage as to damages to property other than the particular part of the property with regard to which the workmanship was faulty.

Accordingly, this exclusion relieves Plaintiffs of liability with regard to the costs of repairing the structure since Steelcon's performance was faulty. It does not, however, relieve them of liability for amounts set off against Steelcon's recovery in the state-court mediation related to property damage to property other than to the structure itself or for Kal–Aero's loss of use of the structure.[1]

1. Steelcon argues that, even with regard to the repair costs for the structure itself, this exception applies only to the labor costs of the repair, but not the costs of the replacement materials. The Court finds no support for this dichotomy in the case law, or in the language of the exclusion.

**B**

■ Plaintiffs also contend that the products exclusion relieves them of liability in the instant case. The policy provides in part:

This insurance does not apply:

\* \* \* \* \* \*

(n) to property damage to the named insured's products arising out of such products or any part of such products;

A "named insured's products" is defined in the policy to mean "goods or products manufactured, sold, handled or distributed by the named insured...." The question at issue with regard to this exclusion is whether the construction of a building is a "good or product".

The Court is aware of no Michigan case which addresses this question. While the Court recognizing that a few jurisdictions have answered this question in the affirmative, this Court is left with the clear impression that, at least where a contractor provides labor only (as in the instant case), the construction of a building is *not* a good or product as those terms are commonly understood. Therefore, the Court concludes that the products exclusion does not relieve Plaintiffs of liability.

**V**

Like the primary policy, the umbrella policy includes a number of exclusions. Specifically, the umbrella policy provides in part:

This insurance does not cover in respect of all the following exclusions, ...

(c) to claims made against the Assured:

\* \* \* \* \* \*

(ii) on account of Property Damage to the Assured's products arising out of such products or any part of such products;

(iii) on account of Property Damage to work performed by or on behalf of the Assured arising out of work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

The exclusion in (c)(ii) is nearly identical to the products exclusion in (n) of the primary policy. For the reasons stated in section IV(B) of this opinion discussing the products exclusion, this products exclusion also fails to relieve Plaintiffs of liability in this case.

■ Having reviewed several Michigan cases interpreting the work exclusion ((c)(iii) of the umbrella policy) as a basis for denying coverage, the Court concludes that, given the facts of the instant case, the result under this exclusion is the same as under the faulty workmanship exclusion.

[The work exclusion] does not remove coverage when property other than the work product itself is damaged due to problems with the product itself, materials or workmanship. The insured only is required to absorb the cost of *replacement or repair of its own work where the damage arises out of the work.*

*Fresard v. Mich. Millers Mut. Ins. Co.,* 414 Mich. 686, 702, 327 N.W.2d 286 (1982) (opinion of Fitzgerald, C.J.); *see also First Mercury Syndicate v. Telephone Alarm Sys.,* 849 F.Supp. 559, 567 (W.D.Mich.1994). Therefore, the work exclusion of (c)(iii) of the umbrella policy relieves Plaintiffs of liability with regard to the costs of repairing the structure since the damage to the structure arose out of Steelcon's own work on the structure. As with the faulty workmanship exclusion of the primary policy, however, it does not relieve them of liability for damages incurred by Steelcon to property other than the structure itself or for Kal–Aero's loss of use of the structure.

**VI**

For the reasons given above, the faulty workmanship exclusion and the work exclusion of the primary and umbrella policies, respectively, relieve Plaintiffs of liability for damage to the structure itself, but not for damage to property other than the structure itself. Steelcon asserts that, even if Plaintiffs are not liable for the costs of repairing the structure, they are liable for Kal–Aero's lost revenues resulting from its loss of use of parts of the structure for periods of time, for replacement of certain drywall within the structure, and for damage to certain aircraft which resulted from the leaking roof.

### A

In his evaluation of Kal–Aero's claim against Steelcon, Mr. Lennon concluded that Kal–Aero was entitled to recover $50,000 for its loss of use of parts of the structure for a one-month period during the summer of 1994. Simply because Kal–Aero's loss of use is an exception to the faulty workmanship exclusion of the primary policy and the work exclusion of the umbrella policy does not mean that that loss of use is necessarily covered under the policies. Clearly, an exception to an exclusion does not provide coverage, and the question in this regard, therefore, is whether these damages are covered by the terms of the policy.

Loss of use is expressly included within the definitions of "property damage" in the primary policy and "Damage" in the umbrella policy. In both policies, however, property damage is covered only if is "caused by an occurrence". "Occurrence", in turn, "means as accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured".[2] Plaintiffs argue that they are not liable for Kal–Aero's loss of use since the loss of use was not caused by an *occurrence*. The Court disagrees.

■ Under Michigan cases interpreting the meaning of "occurrence" and "accident", it appears that where an insured's defective workmanship causes damage only to the insured's work product, that damage is not the result of an occurrence within the meaning of the policies. *See Hawkeye–Security Ins. Co. v. Vector Constr. Co.*, 185 Mich.App. 369, 378, 460 N.W.2d 329 (1990). But where that defective workmanship also causes damage to the property of others which was unforeseen and unexpected, "an 'accident' exists within the meaning of the" policies. *See Calvert Ins. Co. v. Herbert Roofing & Insulation Co.*, 807 F.Supp. 435, 438 (E.D.Mich.1992); *First Mercury Syndicate*, 849 F.Supp. at 565; *Vector Constr. Co.*, 185 Mich.App. at 377, 460

N.W.2d 329 (citing *Bundy Tubing Co. v. Royal Indem. Co.*, 298 F.2d 151, 153–54 (6th Cir.1962)).

■ Thus, it is clear that there may be an "occurrence" even though the policyholder's actions were negligent. The question to be answered in the instant case, therefore, is whether Steelcon expected and intended that Kal–Aero would lose use of the building as a result of Steelcon's faulty workmanship. While such loss of use was foreseeable, it was not substantially certain that Steelcon's actions would result in a loss of use. *See* n. 2. Accordingly, the Court concludes that Kal–Aero's loss of use is property damage which resulted from an occurrence, and is not excluded under either policy.

### B

As part of its warranty to Kal–Aero, De-Loof replaced some drywall inside the structure that had been damaged by water from the leaky roof. DeLoof did not charge Kal–Aero for this work. Therefore, any claim related to the replacement of drywall belonged to DeLoof, not Kal–Aero. Since the mediator awarded DeLoof nothing on its claims against Steelcon, Plaintiffs are not liable for the drywall replacement damages. For the same reason, Plaintiffs are not liable for $6,423.06 which DeLoof paid to Kal–Aero for damage to aircraft, which damage resulted from leaks in the roof of the structure.

### VII

An order consistent with this opinion will be entered.

### *ORDER*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiffs' motion for summary judgment (docket # 20) is **GRANTED IN PART** and **DENIED IN PART;**

---

**2.** The Court notes the conjunctive "neither ... nor", rather than the disjunctive "either ... or", and conclude from this that an accident which results in property damage is an occurrence unless it is *both* unexpected *and* unintended. More-

over, to avoid rendering the inclusion of "expected" meaningless, "intended" must be understood to denote a belief that given consequences are substantially certain to result from an act. *Cf.* Rest. of Torts, 2d, § 8A.

IT IS FURTHER ORDERED AND AD-JUDGED that JUDGMENT be entered DE-CLARING

(1) that Plaintiffs are liable to Defendant SCI Steelcon (Steelcon) for damages incurred by Steelcon in the amount of $50,000, less the applicable deductible of $5,000, which damages were incurred as the result of Defendant Kal–Aero's loss of use of its structure; and·

(2) that Plaintiffs are not liable to Steelcon for other damages incurred by Steelcon.