**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**ALLENDALE NURSING CENTRE d/b/a CCG Allendale, Inc., Defendant.**

No. 1:97–CV–64.

United States District Court, W.D. Michigan, Southern Division.

March 6, 1998.

Laura A. Brodeur, Equal Employment Opportunity Commission, Detroit District Office, Detroit, MI, for plaintiff.

David M. Foy, Francis J. Newton, Jr., Barry, Moorman, King & Hudson, PC, Detroit, MI, for defendant.

**OPINION**

ROBERT HOLMES BELL, District Judge.

Plaintiff, the Equal Employment Opportunity Commission (EEOC) filed this action against Defendant Allendale Nursing Centre alleging that the Defendant violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. In its com-

plaint, the EEOC alleges that the Defendant discriminated against its employee, Stephanie Rhoads, when it terminated her employment because she failed to obtain a social security number. Rhoads, who had been hired by the Defendant as a competency evaluation nurse aide on June 12, 1995, claims that her religious beliefs prevent her from obtaining a social security number. She was terminated from her employment by the Defendant on August 31, 1995.

Before the Court are a number of motions. The Plaintiff has filed a motion for partial summary judgment claiming that it has established a prima facie case of religious discrimination and that the Defendant is unable to demonstrate that an accommodation of Rhoads' religious beliefs would cause undue hardship. In response, the Defendant challenges each element of the Plaintiff's claim and states that it is entitled to summary judgment on the underlying claim. In addition to its response/cross-motion, the Defendant has filed a motion for partial summary judgment in which it claims that the Plaintiff cannot demonstrate that it is entitled to punitive damages. Also before the Court are Plaintiff's motions to strike the affidavit of Steve Armstrong and to strike the Defendant's cross-motion for summary judgment.

### I.

■ The Plaintiff contends that the Defendant's cross-motion as to liability should be stricken as untimely because it was filed after the November 20, 1997 cut-off date for dispositive motions. The motion in question was filed by the Defendant on January 30, 1998, as part of its response to Plaintiff's motion for summary judgment. In its motion for summary judgment on the issue of liability, the Plaintiff claims that there are no issues of material fact and that it is entitled to judgment as a matter of law. In contesting Plaintiff's motion, the Defendant could have argued that there are issues of material fact or it could have argued that there are no issues of fact but the law should be decided in its favor. The Defendant chose the latter option. If the Defendant had styled its motion only as a response to Plaintiff's motion for summary judgment it is clear that this

Court would have the authority to raise and grant a summary judgment motion in favor of the Defendant, the non-moving party. See *Underwriters at Interest v. SCI Steelcon,* 905 F.Supp. 441, 443 (W.D.Mich.1995) (citing *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2nd Cir.1991); *McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir. 1991); *Dayton Elec. Mfg. Co. v. APCOM, Inc.,* 782 F.Supp. 389, 394–95 (N.D.Ill.1992); 6 Moore's Federal Practice, ¶ 56.12). If, after reviewing the motion of the moving party, a court finds that there are no genuine issues of material fact, and the law is on the side of the non-moving party, the court may grant summary judgment in favor of the non-moving party. *Orix Credit Alliance, Inc. v. Horten,* 965 F.Supp. 481, 484 (S.D.N.Y.1997). Because this Court has the authority to grant summary judgment in favor of the Defendant, whether or not the Defendant makes such a motion, the fact that the Defendant styled its response as a response/counter-motion does not form a basis to strike its motion. This Court notes that in its motion to strike, the Plaintiff has not argued that the facts before this Court are not fully developed. Nor has the Plaintiff argued that it has not had an adequate opportunity to demonstrate a genuine issue of material fact. Rather, the Plaintiff has only alleged that Defendant's response/cross-motion was not timely filed. Consequently, this Court finds that Plaintiff's motion to strike must be denied.

### II.

A party moving for summary judgment has the burden of showing that when considering the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Johnson v. United States Postal Service,* 64 F.3d 233, 236 (6th Cir. 1995). The movant may satisfy this initial burden by demonstrating that the non-moving party has failed to introduce sufficient evidence to support an essential element of the cause of action alleged. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving

party meets its burden, the party against whom the motion is brought has the burden of proving that a genuine issue of material fact exists for trial. *Celotex,* 477 U.S. at 324–25, 106 S.Ct. at 2553 (1986). Material facts are facts which might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When a court makes this determination, inferences to be drawn from the underlying facts must be viewed in the light most favorable to party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the mere existence of a scintilla of evidence in support of the opposing party's motion is not sufficient to create a genuine issue of material fact, instead, an issue is genuine if there is evidence such that a reasonable jury could find for the party opposing summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 403 (6th Cir.1992). As stated above, a court may award summary judgment to the non-moving party if it finds there are no genuine issues of material fact and the law is on the side of the non-moving party. *Orix Credit Alliance,* 965 F.Supp. at 484.

### III.

■ The employee has the initial burden of establishing a prima facie case of religious discrimination. The elements that an employee must establish are: (1) she holds a sincere religious belief which conflicts with an employment requirement, (2) she informed her employer of the conflict, (3) and she was discharged for failing to comply with the conflicting employment requirement. *EEOC v. Arlington Transit Mix, Inc.,* 957 F.2d 219, 221 (6th Cir.1991). Once a prima facie case is established, the burden shifts to the employer to demonstrate that it could not reasonably accommodate the employee without undue hardship in the conduct of its business. *Id.*

■ First, this Court will address whether Rhoads holds a sincere religious belief which conflicts with an employment requirement.

Rhoads contends that her religious beliefs do not allow her to obtain a Social Security Number (SSN). Rhoads explains that she "does not have a problem with supporting [her] government in it's duty to protect it's citizens from foreign threat and to uphold justice." However, she states that "the Social Security Administration is *not* a governmental administration that strives to protect United States citizens or uphold justice. Instead, the Social Security Administration heads up programs, such as welfare, which basically confiscate the money that one has earned and gives it to those who are unable or unwilling to work." She concludes that "[m]y religious objection to this is that stealing is wrong." Rhoads also contends that "according to the Bible, it is the family and/or church's responsibility, *not* the government's, to care for those who are truly unable to work." In conclusion, she states "[b]y not having a Social Security Number, I am not *willingly* participating in any of these unbiblical Social Security programs." (P's ex. 22) (emphasis in original).

In her affidavit and brief, Rhoads' views on the issue of willing participation are explained. In her deposition, she states "I have no control whether social security taxes are withheld from my check or not." The Plaintiff's brief explains that "[s]he does not object to paying social security taxes, as she has no control over that." The brief goes on to explain that "[u]nlike social security taxes, she believes she has control over the issue of whether or not to have a SSN."

In the context of religious discrimination claims, courts have been reluctant to scrutinize an individual's religious beliefs and have not required that the beliefs in question be based upon organized or recognized teachings of a particular sect. See *Shpargel v. Stage Co.,* 914 F.Supp. 1468 (E.D.Mich.1996); *Lambert v. Condor Manufacturing, Inc.,* 768 F.Supp. 600 (E.D.Mich.1991).

Rhoads' beliefs can be divided into two separate parts. First, she believes that the Social Security System is an unbiblical program. The record indicates that Petitioner has come to this conclusion based upon her understanding of what the Bible teaches. As

case law suggests, this Court will not scrutinize the logic and sincerity of this belief.

Second, Rhoads believes that it would be a sin to willingly participate in the Social Security System. Again, the Court will not interpret the passages cited by Rhoads to determine if this belief is a sincere religious belief. However, Rhoads combines this belief with two legal conclusions. Her first conclusion is that she does not have any control over the fact that she must pay social security taxes. There does not appear to be any dispute that Rhoads has come to the correct legal conclusion on this issue. Her second legal conclusion is that the law allows her to decide whether or not she will have a SSN. In her brief, Plaintiff explains that "[u]nlike social security taxes, she believes she has control over the issue of whether or not to have a social security number." It is this "belief" that the Defendant disputes. Even with the deferential standard employed by courts in evaluating religious beliefs, this Court has not found any case which requires a court to adopt a party's legal conclusion because that party has labeled it a religious belief.[1] Therefore, it is necessary to determine the accuracy of Rhoads' legal conclusion.

The Plaintiff contends that Rhoads is eligible for a tax identification number (TIN) other than a SSN. The Defendant claims that the only TIN which Rhoads was and is eligible to receive is a SSN. There are three types of TINs: (1) a Social Security Number, (2) an Internal Revenue Service individual taxpayer identification number (IRS–ITIN), and (3) an employer identification number (EIN). 26 CFR § 301.6109–1(a).

According to the regulations, "[e]xcept as otherwise provided in paragraphs (a)(1)(ii)(B) and (D) of [301.6109–1], an individual required to furnish a taxpayer identifying number must use a social security number." *Id.* at (a)(1)(ii)(A). The two exceptions, an EIN and an IRS–ITIN, are discussed below. The regulation continues:

> Any individual required to furnish a social security number pursuant to paragraph (b) of this section shall apply for one, if he has not done so previously, on Form SS–5, which may be obtained from any Social Security Administration or Internal Revenue Service office.... *Individuals who are ineligible for or do not wish to participate in the benefits of the social security program shall nevertheless obtain a social security number if they are required to furnish such a number pursuant to paragraph (b) of this section.*

*Id.* at § 301.6109–1(d)(1)(emphasis added).

Paragraph (b) of the regulation explains, "every U.S. person who makes under this title a return, statement, or other document must furnish its own taxpayer identifying number as required by the forms and accompanying instructions." *Id.* at § 301.6109–1(b)(1). Another regulation explains:

> Every employee who on any day after October 31, 1962, is in employment for wages which are subject to the taxes imposed by the Federal Insurance Contributions Act or which are subject to the withholding of income tax from wages under section 3402 but who prior to such day has neither secured an account number nor made application therefore, shall make an application on Form SS–5 for an account number.... The application shall be filed on or before the seventh day after the occurrence of the first day of employment to which reference is made in subparagraph (1) of this paragraph,...

26 CFR § 31.6011(b)–2(a)(1)(ii) and –2(a)(2). These regulations demonstrate that unless Rhoads meets the criteria for an IRS–ITIN or an EIN, she must have a social security number.

The use of an EIN is explained in 26 CFR § 301.6109–1(a)(1)(ii)(D): "An individual, whether U.S. or foreign, who is an employer or who is engaged in a trade or business as a sole proprietor should use an employer identification number as required by returns, statements, or other documents and their related instructions." *Id.* There appears to be no dispute that Rhoads, who is not an

---

**1.** If an individual claimed that her religious beliefs had caused her to believe that the law did not require her to get a driver's license in order to drive, a court would not be required to accept this legal conclusion because it was stated as a religious belief.

employer or a sole proprietor, does not meet the prerequisites for an EIN.

The other exception, mentioned in 26 CFR 301.6109–1(a)(1)(ii)(B), is an IRS–ITIN. Subsection (a)(1)(ii)(B) of 26 CFR § 301.6109–1 states that "[e]xcept as otherwise provided in paragraph (a)(1)(ii)(D) of this section, an individual required to furnish a taxpayer identifying number but who is not eligible to obtain a social security number, must use an IRS individual taxpayer identification number." *Id.* An IRS–ITIN is defined in the regulations as "a taxpayer identifying number issued to an *alien individual* by the Internal Revenue Service, upon application, for use in connection with filing requirements under this title. . . . For purposes of this section, *the term alien individual means an individual who is not a citizen or national of the United States." Id.* at (d)(3)(i) (emphasis added).

The regulations further explain that if an individual is not eligible to obtain a social security number and is required to furnish a taxpayer identifying number they must apply for an IRS–ITIN on a Form W–7, *Id.* at (d)(3)(ii). Form W–7 states at the top of the form "Note: Do not file this form if you have, or are eligible to obtain, a U.S. social security number (SSN)." (docket # 49 ex. 7). In the instructions to Form W–7, it states: "Who does not file Form W–7—Do not file this form if you have an SSN or you are eligible to obtain an SSN. *Thus, do not file this form if you are a U.S. citizen or national, or if you have been lawfully admitted for permanent residence or U.S. employment." Id.* (emphasis added).

The regulations state that "[a]ny individual who is duly assigned a social security number or who is entitled to a social security number will not be issued an IRS individual taxpayer identification number." 26 CFR § 301.6109–1(d)(4). The record indicates that Rhoads is a United States citizen. Therefore, as the regulations and instructions cited above indicate, Rhoads is not eligible to obtain an IRS–ITIN and consequently is required to obtain a SSN as her TIN.

In spite of these regulations, the Plaintiff contends that it is undisputed that the IRS issued Rhoads a TIN after it received letters from her which indicated that she was not eligible for a SSN due to her sincerely held religious beliefs.[2] There are two numbers which the IRS has used with respect to Rhoads' tax returns. First, two letters dated June 10, 1996 sent by the IRS to Rhoads reference a taxpayer identifying number of T07176793. In one letter, the IRS states that Rhoads is due a refund, however, "we must verify your social security number before we can send your refund. To do this we will soon send you a request for verification to complete and return."[3] This letter indicates that the IRS was operating under the assumption that Rhoads had a SSN, not that the number at the top of the page was a substitution for a SSN. A second letter, also dated June 10, 1996, stated "[a] tax identification number (TIN) is either a social security number (SSN), an Internal Revenue Service number (IRSN) which is a temporary number that is assigned by IRS until you receive a SSN, or an IRS individual taxpayer identification number (ITIN) which is a permanently assigned number by IRS when you do not qualify for SSN from the Social Security Administration." This letter indicates that in addition to an EIN, IRS–ITIN, and SSN, there is a fourth type of TIN, an IRSN. However, this number is temporarily assigned in anticipation of the individual in question obtaining a SSN. It is clear from these two letters that the IRS expected Rhoads to apply for a SSN and that any taxpayer identifying number she had received was only temporarily assigned until she obtained a SSN.

The second number that was assigned to Rhoads was a number listed on a August 21, 1996 letter from the IRS. She was assigned a number of 907–17–6793*. However, the earlier letter from the IRS explained to Rhoads that "[i]f you do not have a tax identification

---

**2.** The numbers in question were included in a letter from the IRS to Rhoads more than nine months after her employment with the defendant had been terminated.

**3.** The Plaintiff cites to this letter as evidence that the IRS gave Rhoads a tax refund. However, the letter merely stated that she was entitled to a refund but the IRS needed to verify her SSN.

number or *received a number that begins with 9; you must contact the Social Security Administration to obtain a Social Security Number (SSN) for tax identification purposes."* (emphasis added). This letter clearly demonstrates that the number was issued by the IRS with the understanding that it was not a substitute for a SSN. Such a number was given with the understanding that Rhoads would obtain a SSN for tax identification purposes.

The regulations indicate that because Rhoads is not eligible for an EIN or an IRS–ITIN, she must apply for a SSN. In addition, the actions of the IRS in this case demonstrate that it continues to believe that Rhoads must obtain a SSN. The fact that Rhoads was assigned temporary numbers while she should have applied for a SSN does not somehow waive the requirement that she obtain a SSN. Therefore, this Court finds that the legal conclusion which Rhoads labels a "religious belief" is an incorrect interpretation of law.

The above analysis reveals a second error in the Plaintiff's argument. In its brief the Plaintiff claims that the Defendant's requirement that Rhoads have a SSN was an employment requirement not a requirement imposed by law. The Plaintiff claims "[t]here is no requirement that an employee have a SSN in order to be employed for wages..." The Plaintiff is correct that there are other TINs besides a SSN. However, these other TINS, an EIN and an IRS–ITIN, are not numbers for which Rhoads is eligible to apply. The Plaintiff is also correct that another number was issued to Rhoads. However, this number was issued temporarily so that Rhoads could obtain a SSN, which she is required to obtain. Therefore, Rhoads' dispute is with the IRS or SSA, not with her employer. If the EEOC or Rhoads believes that the legal requirement that an individual in her situation must obtain a SSN is unconstitutional, they should challenge the constitutionality of the law in a suit against the IRS.[4]

## IV.

Because the Plaintiff has failed to establish a prima facie case of religious discrimination, the Defendant is entitled to summary judgment.[5] The Plaintiff, however, contends that even if Rhoads could not have obtained an IRS–ITIN (therefore requiring her to obtain a SSN), the Defendant is still required to accommodate her belief that she is not required to obtain a SSN.

The Defendant contends that it is required by law to furnish to the IRS its employees' TINs and could be subject to penalties from the IRS if it fails to comply with these penalties. See 26 U.S.C. § 6723. The instructions accompanying IRS Form W–2 indicate that an employer could be subject to penalties if it fails to report a TIN or reports an incorrect TIN. Therefore, the Defendant is correct when it states that it could be subject to penalties if it fails to report a TIN for an employee. Again, this demonstrates that the Allendale Nursing Centre is not the party with whom the Plaintiff has a dispute. Rather, if the Plaintiff disagrees with underlying law, it should dispute the matter with the IRS.

The Plaintiff claims that because the Defendant was not actually penalized by the IRS for Rhoads failure to provide a TIN, the Defendant cannot show that it could not reasonably accommodate Rhoads' belief that she is not required to obtain a SSN. This Court finds nothing that indicates that an employer is required to wait until it is actually penalized, or even investigated, by the IRS in order to demonstrate undue hardship. Consequently, this Court finds that the Plaintiff's claim lacks merit.

The Plaintiff next claims that because the Tax Code provides a waiver provision for penalties, 26 U.S.C. § 6724, the Defendant

---

4. To the extent that the Plaintiff claims that the IRS would allow Rhoads to have a temporary number for life based upon her religious beliefs, this Court notes that none of the statutes, regulations, cases, or documents provided to this Court indicate that such an allowance has been made in this case or in any case.

5. This Court has not considered the affidavit of Steve Armstrong in granting the Defendant summary judgment. Therefore, the Plaintiff's motion to strike the testimony of Steve Armstrong is denied as moot.

was obligated to seek a waiver in order to accommodate Rhoads' belief that the law does not require her to obtain a social security number. The waiver statute and the instructions to IRS Form W–2 provide that if a party demonstrates that its failure to provide a TIN or correct TIN is due to reasonable cause and not willful neglect a penalty is not imposed. 26 U.S.C. § 6724(a). The regulations accompanying the waiver statute set out what actions an employer must take in order to obtain a waiver in the event an employee is the cause of the penalty assigned pursuant to section 6723. With respect to missing TINs an employer must demonstrate that the error resulted from a failure on the part of the employee and must undertake a number of steps including making requests to the employee to provide the TIN in question. See 26 C.F.R. § 301.6724–1. There is nothing that indicates that the waiver provision was put in place to benefit the employee who caused the penalties pursuant to section 6723 to be imposed. The Plaintiff has attempted to transform a section which allows an employer to likely avoid certain penalties if it takes certain steps into a requirement that the employer must take these steps in order to accommodate the employee who caused the penalty in the first place. The Plaintiff has not cited anything which supports such a reading of the waiver provision. This Court does not believe that such a reading is merited.

The Plaintiff's final contention is that any fine imposed by the IRS pursuant to section 6723 would be de minimis and therefore the Defendant is unable to demonstrate that it could not reasonably accommodate Rhoads by paying a small fine. A similar de minimis penalty argument was presented by a pro se plaintiff in the case of *Hover v. Florida Power & Light Co.*, 1995 WL 91531 (S.D.Fla. 1995) *aff'd* 101 F.3d 708 (11th Cir.1996) *cert. denied*, —— U.S. ——, 117 S.Ct. 2460, 138 L.Ed.2d 216 (1997). In *Hover*, a plaintiff who had a social security number, but alleged the use of the number would violate his religious beliefs, argued that his employer should make up a SSN when it filed its returns with the IRS. He claimed that any fines incurred by his employer would be de minimis. The court responding to this argument by stating:

> The Court finds this argument and the reasoning of the Plaintiff very convoluted. What the Plaintiff is submitting, by way of argument, is that [the employer] should intentionally violate these Federal Regulations and Statutes to provide the Plaintiff with a reasonable accommodation because in the Plaintiff's view, the possible penalties to [the employer] are rather small. This Court cannot imagine any Court finding that an employer is required to intentionally violate a Federal Regulation and/or Statute to make a reasonable accommodation to an employee under such a factual situation as we have here.

*Id.* at *4. Likewise, this Court finds that the Plaintiff's argument lacks merit. Therefore, the Plaintiff's motion for summary judgment must be denied and summary judgment must be granted in favor of the Defendant in this matter.

## V.

Because summary judgment has been granted in favor of the Defendant, it is not necessary to address the Defendant's motion seeking summary judgment as to the Plaintiff's punitive damages claim. The Civil Rights Act of 1991 allows for punitive damages in cases of intentional discrimination if a plaintiff demonstrates that the defendant acted with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). In its pleadings and at the summary judgment hearing, the Plaintiff conceded that it was seeking approximately $100 in compensatory damages and nominal damages. Therefore, this case centered upon the Plaintiff's claim of punitive damages.

Irrespective of· the merits of the underlying religious discrimination claim, this Court finds that there is absolutely no basis for Plaintiff's claim of punitive damages. Even after the evidence in this case is reviewed in a light most favorable to the Plaintiff there is not even a shred of evidence upon which a claim for punitive damages could be sustained. This is particularly egregious because Rhoads' claim is being prosecuted by

an agency of the United States government which used public resources to finance this lawsuit against the Defendant.

An order consistent with this opinion shall be entered.

### ORDER & JUDGMENT

In accordance with the opinion entered this date;

**IT IS HEREBY ORDERED** that Plaintiff's motion for partial summary judgment on the issue of liability (docket # 35) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's cross-motion for summary judgment (docket # 48) is **GRANTED,** and Plaintiff's claim is **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant's motion for partial summary judgment on the issue of damages (docket # 32) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike defendant's cross-motion for summary judgment (docket # 54) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike the affidavit of Steve Armstrong (docket # 55) is **DENIED** as moot.

**IT IS SO ORDERED.**