Shelly Lynn BALTGALVIS, Plaintiff,

v.

NEWPORT NEWS SHIPBUILDING INC., et al., Defendants.

No. CIV. A. 400CV55.

United States District Court,
E.D. Virginia,
Newport News Division.

Feb. 22, 2001.

Shelly Lynn Baltgalvis, Hampton, VA, pro se.

Dean Clement Berry, Newport News Shipbuilding and Dry Dock Corp., Newport News, VA, for Defendant.

## OPINION & ORDER

DOUMAR, District Judge.

Presently before the Court are Plaintiff's Motion to Continue and Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). As explained herein, the Court will construe Defendants' Motion as one for Summary Judgment. For the reasons set forth below, Plaintiff's Motion to Continue is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED.**

### I. Factual and Procedural Background

The material facts of the instant case are both undisputed and straightforward. Defendants, Newport News Shipbuilding, Inc. and Newport News Shipbuilding and Dry Dock Co. (collectively referred to as "NNS" or "the company"), hired the *pro se* Plaintiff, Shelly Lynn Baltgalvis ("Ms.Baltgalvis"), in July of 1999 as a Senior Analyst Technician. *See* Defs.' Mem. Supp. Summ. J. at 1. During the processing stage of the hiring procedure, Ms. Baltgalvis informed NNS that she objected to the use of her social security number ("SSN") on NNS records. *See* Compl. ¶ 1. She based her objection on religious grounds, contending that the use of a SSN represents the "mark of the beast" as described in the Bible's Book of Revelation.[1] Ms. Baltgalvis requested instead that NNS accommodate her religious convictions by using another number to identify her in the company's records. *See id.* In response, NNS refused to accommodate Ms. Baltgalvis's religious beliefs and subsequently terminated her employment. *See id.* at ¶ 7.

Ms. Baltgalvis filed this action, on May 17, 2000, pursuant to Title VII of the Civil Rights Act of 1964, alleging religious discrimination by NNS in that the company refused to accommodate her religious beliefs and ultimately terminated her because of her religion. *See id.* ¶ 1. She requests that this Court grant a "permanent injunction enjoining [NNS] ... from engaging in any employment practice which discriminates on the basis of religion and/or beliefs and convictions." *Id.* ¶ 11. She further seeks an order that NNS "institute and carry out policies, practices and programs which provide equal employment opportunities for employees of all religious denominations and/or beliefs and convictions, and which eradicate the effects of its past and present unlawful employment practices." *Id.* ¶ 12. Moreover, Ms. Baltgalvis requests reinstatement to the position of Senior Analyst Technician, an award of backpay with prejudgment interest, monetary relief for her "emotional distress, physical stress, loss of sleep, and other effects," as well as an award of costs. *Id.* ¶ 13, 14 & 16.

On July 28, 2000, almost a week before the summons issued for NNS was returned executed, NNS filed a Motion to Dismiss, or in the alternative, for Summary Judgment. In support of this mo-

---

1. *See id.* ¶ 9. The theological roots of Ms. Baltgalvis's asserted belief lie in the New Testament's Book of Revelation, which, in its thirteenth chapter, refers to two beasts. The Book of Revelation prophesies that those who receive the mark of the second beast shall be condemned to eternal damnation. *See Book of Revelation* 14:9–11. This mark is characterized as a number required for buying and selling. *See id.* at 13:17; *see also Stevens v. Berger*, 428 F.Supp. 896 (E.D.N.Y.1977) (providing an extensive discussion of the theological and historical origins of the "mark of the beast"). Apparently, Ms. Baltgalvis believes that SSNs have come to share many of the characteristics of the "mark of the beast" and thus that SSNs may be the "mark of the beast."

tion, NNS argued that Ms. Baltgalvis had failed to establish a prima facie case of religious discrimination under Title VII. In addition, NNS argued that even if this Court were to find that Ms. Baltgalvis had demonstrated a prima facie case of religious discrimination, her proposed accommodation would pose an undue hardship on the company.

■ After receiving an extension of thirty (30) days in which to file a response to NNS's motion, Ms. Baltgalvis filed her Response on October 24, 2000. NNS timely filed a Reply brief, and Ms. Baltgalvis later filed a "supplemental" response, an affidavit, and an additional memorandum in support of her Response. Ms. Baltgalvis also requested a hearing on the motion. After two months of attempting to schedule a hearing with Ms. Baltgalvis on this matter, the calendar clerk finally obtained a date agreeable to her—February 22, 2001. On February 20, 2001, just two days before this Court was scheduled to hear the motion, Ms. Baltgalvis filed a Motion to Continue the hearing date, asserting that she was severely ill, confined to bed rest, and therefore, unable to attend oral argument. Interestingly, however, Ms. Baltgalvis managed to appear in the Clerk's office on that same day, examine her case file, and file another "supplemental" response to NNS's motion. Although the Court sympathizes with Ms. Baltgalvis's "severe illness," which supposedly prevents an appearance for oral argument yet allows for an appearance in the Clerk's Office to peruse her file and file motions, it finds that she has not demonstrated the requisite good cause necessary for this Court to grant her motion for a continuance or in fact, to even have a hearing. As such, the Court **DENIES** Ms. Baltgalvis's Motion to Continue as well as her request for an oral argument.

Indeed, the Court finds that oral argument is not necessary in this case and therefore, the hearing scheduled for February 22, 2001 is hereby CANCELED. As a preliminary matter, the Court notes that Ms. Baltgalvis did not timely request a hearing in this matter. In fact, it was not until November 8, 2000, after three (3) months had passed from the date that NNS filed its Motion to Dismiss, or in the alternative, for Summary Judgment, that Baltgavis requested a hearing in this matter. *See* Local Rule of Practice 7(D) of the United States District Court for the Eastern District of Virginia (stating that a hearing must be set within thirty (30) days after the date on which the motion is filed). Further, in accordance with Federal Rule of Civil Procedure 78, this Court may rule upon motions without an oral hearing. *See* Local Rule 7(I). Although in an overabundance of caution for the *pro se* plaintiff, the Court attempted to set a hearing in this matter, it is now apparent that Ms. Baltgalvis communicates with the Court through voicemail messages. She does not answer her telephone, she takes voicemail messages, and she replies after business hours by leaving voicemail messages. As a result, Ms. Baltgalvis has made the act of scheduling a hearing in this matter an onerous burden. Further, the Court finds that a hearing is not necessary for the legal issues presented in the instant case. Therefore, the Court dispenses with oral argument because the parties have adequately presented the facts and legal contentions in the materials before the Court and a hearing would add nothing to this case. The matter is now ripe for review.

## II. *Legal Analysis*

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to move the Court to dismiss an action for the failure of a plaintiff to state a claim upon which relief can be granted. When considering a motion made pursuant to Rule 12(b)(6), a court is generally limited to a review of the pleadings filed in the case. Rule 12(b) provides further, however, that if "matters outside the pleading are presented to and not excluded by the court" that the motion "shall be treated as one for summary judgment

and disposed of as provided in Rule 56 .…" As Ms. Baltgalvis has submitted an affidavit as well as a number of exhibits for consideration, the Court finds that Defendants' motion is one more properly treated as a Motion for Summary Judgment, pursuant to Rule 56(c).

Rule 56(c) requires this Court to enter judgment against a party who, "after adequate time for … discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevail on a motion for summary judgment, NNS must demonstrate that (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact has been raised, the Court must construe all inferences in favor of Ms. Baltgalvis. *See id.* at 257–58, 106 S.Ct. 2505. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," this Court must grant summary judgment in that party's favor. *Id.* at 251–52, 106 S.Ct. 2505. Ms. Baltgalvis "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). In addition, to survive NNS's motion, Ms. Baltgalvis may not rest on her pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

**B.  Applicable Law in General**

Title VII provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion .…" 42 U.S.C. § 2000e–2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). Courts have recognized that employees may utilize two theories in asserting religious discrimination claims. These theories are termed the "disparate treatment" and "failure to accommodate" theories. *See Chalmers v. Tulon Co. of Richmond,* 101 F.3d 1012, 1017 (4th Cir.), *cert. denied,* 522 U.S. 813, 118 S.Ct. 58, 139 L.Ed.2d 21 (1997).

■ In a religious accommodation case, the category into which the instant case falls, an employee may establish a claim even though she is unable to (1) demonstrate that other employees were treated more favorably or (2) rebut an employer's legitimate, nondiscriminatory reason for her discharge. This is because, as the "failure to accommodate" theory recognizes, an employer must, to an extent short of undue hardship, actively attempt to accommodate an employee's religious beliefs, expression, or conduct even if, absent the religious motivation, the employee's behavior would supply a legitimate ground for discharge.

**C.  Prima Facie Requirements for a Title VII Religious Accommodation Claim**

■ To establish a prima facie religious accommodation claim, Ms. Baltgalvis must establish that (1) she has a bona fide reli-

gious belief that conflicts with an employment requirement; (2) she informed NNS of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement. *See Chalmers,* 101 F.3d at 1019. If Ms. Baltgalvis establishes a prima facie case, the burden then shifts to NNS to demonstrate that it could not accommodate her religious needs without undue hardship to its business. *See id.*

■ As mentioned above, the material facts involved the instant case are not in dispute. For purposes of the motion, NNS assumes that Ms. Baltgalvis has a bona fide religious belief that leads her to object to the use of her SSN on company records. Moreover, it is uncontested that Ms. Baltgalvis informed NNS of her belief and that NNS terminated her employment because she did not provide the company with her SSN for its records. Nevertheless, NNS argues that Ms. Baltgalvis cannot establish a prima facie case of religious accommodation discrimination on these facts because it is the federal government—specifically the Internal Revenue Service ("IRS")—not NNS, that imposes the requirement that an employer maintain records that include its employees' SSNs. In short, NNS argues that Ms. Baltgalvis was discharged not because of a NNS employment requirement, but because of a requirement of federal law. This Court agrees.

The Internal Revenue Code ("IRC"), 26 U.S.C. § 6109(a)(3) & (d), requires that employers document and provide the SSNs of their employees.[2] Specifically, federal law requires employers to report to the IRS the amount of taxes withheld for each employee. These reports require identification of employees by their SSN. *See* 26 U.S.C. § 6109; 26 C.F.R. §§ 31.6011(b)–2, 31.6109–1, 31.6674–1. Both the employee and the employer are subject to potential penalties from the IRS for not reporting

its employees' SSNs. *See* 26 U.S.C. §§ 6721, 6722, 6723.

The Eighth Circuit recently decided a case involving a strikingly similar fact pattern. *See Seaworth v. Pearson,* 203 F.3d 1056 (8th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 226, 148 L.Ed.2d 160 (2000). In *Seaworth,* the plaintiff argued that his employer had discriminated against him on the basis of his religion by refusing to hire him unless he provided his SSN. *See id.* at 1057. Similar to Ms. Baltgalvis, Seaworth refused to use a SSN because he claimed that it represented the "mark of the beast" as described in the Bible's Book of Revelation. *See id.* Assuming, without deciding, that Seaworth had established a bona fide religious belief, the Eighth Circuit affirmed the district court's ruling that the IRS, not the plaintiff's employer, imposed the requirement that Seaworth provide a SSN to his employer. *See id.* (citing 26 U.S.C. § 6109). As a result, the court held that Seaworth's religious beliefs did not conflict with an employment requirement, but rather a federal law, and as a result, he was not able to establish a prima facie case of religious discrimination. *See id.; see also EEOC v. Allendale Nursing Centre,* 996 F.Supp. 712, 717 (W.D.Mich.1998) (holding that an employee failed to establish a prima facie case of religious discrimination under Title VII because the employer's requirement that the employee provide a SSN was a requirement imposed by law, not the employer).

As the instant case involves precisely the same issue, and there is no reason to believe that the Fourth Circuit would conclude otherwise, this Court finds that Ms. Baltgalvis has failed to state a prima facie case of religious discrimination under Title VII. The Court reaches this conclusion based on the fact that the requirement that Ms. Baltgalvis provide her SSN to her

---

2. Moreover, the Immigration and Naturalization Service ("INS") also requires employers to provide the SSNs of their employees. *See*

8 C.F.R. § 274a.2(a) & (b)(1)(i); 8 C.F.R. § 274a.10(b)(2); Immigration Form I–9.

employer is one imposed by federal law and merely implemented by NNS.[3]

## D. Is the Requested Accommodation an Undue Hardship for NNS?

■ NNS further argues that even if this Court were to conclude that Ms. Baltgalvis has established a prima facie case of religious accommodation discrimination, this action must still be dismissed because her proposed accommodation—that NNS use some identifying number other than her SSN in company records—would impose an undue hardship on NNS's business. Again, this Court agrees.

■ Courts have consistently agreed that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law. In fact, the Ninth Circuit also recently decided an analogous case involving a prospective employee who sued under Title VII because an employer failed to hire him after he refused to provide his SSN as required by federal law. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999). In *Sutton*, the court recognized that other courts faced with similar fact patterns previously had decided that the plaintiff failed to demonstrate a prima facie case of religious discrimination under Title VII. *See id.* at 830–31. However, the court disposed of the case on another basis—concluding that the existence of federal laws requiring the provision of an employee's SSN to his employer instead established "undue hardship." The court reached this conclusion by reasoning that the requested accommodation risked liability for violating federal laws. In so holding, the court cited to the Tenth Circuit's decision in another factually similar case, *Weber v. Leaseway Dedicated Logistics, Inc.*, 166 F.3d 1223, 1999 WL 5111 (10th Cir.1999) (unpublished disposition). The *Weber* court, analyzing a case in

which a plaintiff challenged his employer's request for a SSN, stated that

[u]nder federal law, all employers are required to withhold certain income taxes and social security taxes and file a report with the Internal Revenue Service as to each individual employee. These reports require identification of the employee by social security number. Requiring Defendant to violate these laws in order to accommodate Plaintiff['s religious beliefs] would result in an undue hardship to Defendant.

*Id.* Based on this analysis, the *Sutton* court determined that the employer successfully had established that the requested accommodation would cause "undue hardship" as a matter of law.

Further, it is necessary to point out that 26 U.S.C. § 6721(a)(1) & (a)(2)(B) provide for a $50 penalty for each return that fails to include all of the information required to be shown on the return. Similarly, 26 U.S.C. § 6723 states that, in the case of a failure to comply with a specified information reporting requirement, a penalty of $50 for each failure shall issue, but the total amount imposed for all such failures during any calendar year shall not exceed $100,000. Even despite these IRC statutory provisions, however, Ms. Baltgalvis argues that the $50 penalty that NNS potentially could face for non-compliance with the IRC is "de minimis" and therefore not an undue hardship by definition. Further, she maintains that NNS could seek a reasonable-cause waiver under 26 U.S.C. § 6724(a), which provides that "no penalty shall be imposed [for failure to include a SSN on an information return] if it is shown that such failure is due to reasonable cause and not to willful neglect." Unfortunate for Ms. Baltgalvis, however, is the fact that several courts have also addressed this very same issue, ultimately ruling in favor of the employer.

---

**3.** The Court notes that an alternative remedy that Ms. Baltgalvis may seek to explore—if she believes that the legal requirement to provide her employer with a SSN is unconstitutional—is a suit against the IRS, challenging the constitutionality of the relevant laws.

In *Seaworth,* the Eighth Circuit stated that "[e]ven if a waiver could be obtained ... the expense and trouble incident to applying for it imposes a hardship that is more than de minimis, as a matter of law." *Seaworth,* 203 F.3d at 1057 (citing *Allendale Nursing Centre,* 996 F.Supp. at 718) (holding that the IRC waiver provision does not exist to benefit an employee who caused a penalty to be imposed and that an employer is not required to take steps to accommodate an employee who caused a penalty); see also *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 67, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) (stating that an accommodation causes undue hardship whenever it results in more than de minimis cost to the employer). This Court agrees with the Eighth Circuit's analysis and thus finds that the $50 penalty NNS potentially may face for non-compliance with the IRC is not de minimis and, as such, Ms. Baltgalvis's proposed accommodation creates an undue hardship for NNS and its business operations. In addition, it is this Court's opinion that the burden of applying for a waiver of the IRC's statutory penalty provision is also more than de minimis and therefore, constitutes an undue hardship for NNS as a matter of law. Thus, even if Ms. Baltgalvis were able to demonstrate a prima facie case of religious accommodation, her proposed accommodation creates an undue hardship for NNS's business.

### III. *Conclusion*

The very issue with which this Court is presented in the instant case has been adjudicated by a number of courts in the recent past. Although courts have disagreed on the rationale, they do agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal law. That is, although courts have reached the same ultimate conclusion—dismissal of the employee's Title VII religious discrimination claim— courts have arrived at that conclusion by two different routes. One rationale is to find that the employee failed to establish a prima facie case because the IRS, not the employer-defendant, imposed the requirement that the employee provide a SSN to their employer. The other rationale is to hold that the proposed accommodation— assigning the plaintiff another identifying number instead of her SSN—causes undue hardship to the employer because it results in a violation of federal law. Ms. Baltgalvis has cited no case law contrary to this conclusion and the Court is likewise unable to identify any.

For the reasons set forth above, Plaintiff's Motion to Continue is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED.** The Court finds that NNS has demonstrated that no genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law.

Ms. Baltgalvis is ADVISED that she may appeal from this final order by forwarding a *written* notice of appeal to the Clerk of the United States District Court, U.S. Courthouse, P.O. Box 494, Newport News, Virginia 23607. Said written notice must be received by the Clerk within thirty (30) days from the date of this Opinion & Order.

The Clerk of the Court is **DIRECTED** to mail a copy of this Opinion & Order to Plaintiff and counsel for Defendants.

**IT IS SO ORDERED.**